k.      VIKTOR KOZENY and FREDERIC BOURKE, JR., the defendants, Clayton Lewis, Hans Bodmer, and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, provided and caused to be provided gifts of jewelry and luxury items; medical care and services; first class and private jet travel; designer clothing; meal and lodging expenses, and other items of value to the Azeri Officials and members of their families.

**OVERT ACTS**

67.  In furtherance of said conspiracy and to effect the illegal objects thereof, VIKTOR KOZENY, FREDERIC BOURKE, JR., and DAVID PINKERTON, the defendants, Clayton Lewis, Hans Bodmer and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.      From on or about May 19, 1997, through on or about May 20, 1997, VIKTOR KOZENY and FREDERIC BOURKE, JR., the defendants, Thomas Farrell, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, traveled together from Moscow, Russia to Baku, Azerbaijan aboard KOZENY's private jet to explore investment opportunities in Azerbaijan.

b.   On or about July 15, 1997, a law partner of Hans Bodmer flew to Baku by private plane carrying approximately $5,000,000 in United States currency to fund VIKTOR KOZENY's, the defendant's, purchases of privatization vouchers in Azerbaijan.

c.   In or about July 1997, VIKTOR KOZENY, the defendant, and Thomas Farrell, a co-conspirator not named as a defendant herein, paid a middleman approximately $10,000 in United States currency to arrange a meeting with an Azeri government official regarding privatization, and then met with an individual in the Presidential Apparatus Building in Baku to discuss KOZENY's participation in privatization in Azerbaijan.

d.   In or about July 1997, VIKTOR KOZENY, the defendant, and Thomas Farrell, a co-conspirator not named as a defendant herein, hired Azeri presidential security personnel to safeguard KOZENY's vouchers and options and to protect his voucher purchasing activities.

e.   In or about July 1997, VIKTOR KOZENY, the defendant, and Thomas Farrell, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury made approximately thirty (30) separate "protection" payments, totaling more than $1,000,000, to a Chechen individual in Baku, in order to safeguard KOZENY's voucher purchasing operations.

f.   Between on or about August 14, 1997, and on or about August 17, 1997, VIKTOR KOZENY, the defendant, and

-36-

others known and unknown to the Grand Jury, traveled with potential investors to Baku to discuss further investment in privatization in Azerbaijan.

g.   In or about August 1997, VIKTOR KOZENY, the defendant, a co-conspirator not named as a defendant herein, and at least one other person met in Baku with the Senior Azeri Official, the SOCAR Official, and SPC Official # 2.

h.   In or about August 1997, VIKTOR KOZENY, the defendant, Thomas Farrell, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, participated in meetings in Baku with the SOCAR Official and the SPC Officials.

i.   On or about November 24, 1997, VIKTOR KOZENY, the defendant, flew to London, England, to attend a meeting with the SOCAR Official that had been arranged by SPC Official #2.

j.   On or about January 9, 1998, VIKTOR KOZENY, the defendant, instructed Hans Bodmer and Thomas Farrell, co-conspirators not named as defendants herein, to wire $1,000,000 to a bank account in the Netherlands for the benefit of an individual identified by SPC Official #2.

k.   Between on or about January 11, 1998, and on or about January 14, 1998, VIKTOR KOZENY and FREDERIC BOURKE, JR., the defendants, and others known and unknown to the Grand Jury, traveled with potential investors to Baku to discuss

-37-

further investment in privatization in Azerbaijan.

l.      Between on or about February 5, 1998, and on or about February 6, 1998, VIKTOR KOZENY and FREDERIC BOURKE, JR., the defendants, and others known and unknown to the Grand Jury traveled with potential investors to Baku to discuss further investment in privatization in Azerbaijan.

m.      On or about February 27, 1998, VIKTOR KOZENY, the defendant, and others known and unknown to the Grand Jury met with representatives of Omega and Pharos, at Omega and Pharos' offices in New York, New York, regarding a proposed investment with KOZENY and Oily Rock in Azeri privatization.

n.      On or about March 2, 1998, FREDERIC BOURKE, JR., the defendant, and members of his family and personal friends, invested approximately $7,000,000, through a company called Blueport International, Ltd. in Oily Rock.

o.      In or about early March 1998, VIKTOR KOZENY and FREDERIC BOURKE, JR., the defendants, and Thomas Farrell, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, provided and paid for medical, hotel, meal, private jet, charter and commercial air travel expenses for SPC Official #1, who visited the New York, New York offices of two physicians for medical assessment and treatment.

p.    On or about March 10, 1998, VIKTOR KOZENY, the defendant, directed Hans Bodmer, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, to charter a jet to deliver more than $5,000,000 in United States currency to Baku for the purpose of funding purchases of privatization vouchers and options.

q.    On or about March 11, 1998, VIKTOR KOZENY, the defendant, met with Clayton Lewis, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, at Omega's and Pharos' offices in New York, New York to discuss further the proposed investment by Omega and Pharos with KOZENY and Oily Rock in Azeri privatization.

r.    Between on or about March 16, 1998, and on or about March 20, 1998, VIKTOR KOZENY, the defendant, Clayton Lewis, Hans Bodmer and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, traveled from New York, New York and elsewhere to Baku to meet with each other and with the Azeri Officials to discuss Azeri privatization and the proposed investment by Omega and Pharos with KOZENY and Oily Rock in Azeri privatization.

s.    On or about March 19, 1998, VIKTOR KOZENY, the defendant, caused Hans Bodmer, a co-conspirator not named as a defendant herein, to send a facsimile letter outlining "a possible company structure which would be suitable to participate

-39-

in the privatization program in Azerbaijan" to Clayton Lewis, a co-conspirator not named as a defendant herein, and other representatives of Omega and Pharos in New York, New York.

       t.   On or about March 25, 1998, Clayton Lewis, a co-conspirator not named as a defendant herein, sent a letter from Omega's and Pharos' offices in New York, New York, to Baku, addressed to the Senior Azeri Official advising him that Omega was "prepared to invest up to USD 100 million" in privatization, and requesting that the Senior Azeri Official grant Lewis and others known and unknown to the Grand Jury a meeting to discuss Omega's and Pharos' participation in privatization in Azerbaijan.

       u.   On or about March 26, 1998, Clayton Lewis, a co-conspirator not named as a defendant herein, telephoned DAVID PINKERTON, the defendant, at AIG's offices in New York, New York, to propose an investment by AIG with Omega, Pharos, Oily Rock and Minaret in privatization in Azerbaijan.

       v.   From on or about March 27, 1998 through on or about June 11, 1998, VIKTOR KOZENY, the defendant, Clayton Lewis, Hans Bodmer and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, caused Omega to wire approximately $126,000,000 from or through accounts in New York, New York to accounts in Switzerland, including accounts at Hyposwiss under the control of VIKTOR KOZENY, the defendant, and Hans Bodmer, a co-conspirator

-40-

not named as a defendant herein, for the purchase of
privatization vouchers and options in Azerbaijan.

w.    From on or about March 27, 1998 through on or
about May 8, 1998, VIKTOR KOZENY, the defendant, Clayton Lewis,
Hans Bodmer and Thomas Farrell, co-conspirators not named as
defendants herein, and others known and unknown to the Grand
Jury, caused Pharos to wire approximately $25,000,000 from
accounts in New York, New York to an account at Hyposwiss under
the control of Hans Bodmer, a co-conspirator not named as a
defendant herein, for the purchase of privatization vouchers and
options in Azerbaijan.

x.    On or about March 30, 1998, Clayton Lewis, a
co-conspirator not named as a defendant herein, and others known
and unknown to the Grand Jury, met in New York, New York with
Hans Bodmer, a co-conspirator not named as a defendant herein, to
discuss Omega's and Pharos' investment in privatization in
Azerbaijan.

y.    On or about March 30, 1998, Clayton Lewis, a
co-conspirator not named as a defendant herein, authorized Hans
Bodmer, a co-conspirator not named as a defendant herein, and
another law partner in von Meiss Blum & Partners, to wire
$25,000,000 held in a client account maintained by von Meiss Blum
& Partners on Omega's behalf to Minaret in connection with the
purchase of privatization vouchers and options in Azerbaijan.

-41-

z.   On or about April 1, 1998, Hans Bodmer, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, chartered a jet to transport from Zurich, Switzerland to Baku, Azerbaijan approximately $21,000,000 in United States currency provided by Omega for the purchase of privatization vouchers and options in Azerbaijan.

aa.   On or about April 1, 1998, DAVID PINKERTON, the defendant, and a co-conspirator not named as a defendant herein met with Clayton Lewis, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, in New York, New York, to discuss further a proposed investment by AIG with Omega, Pharos and VIKTOR KOZENY, the defendant, in privatization in Azerbaijan.

bb.   Between on or about April 2, 1998, and on or about April 4, 1998, VIKTOR KOZENY and FREDERIC BOURKE, JR., the defendants, Clayton Lewis, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, met in Aspen, Colorado, at the homes of KOZENY and BOURKE, and elsewhere, to discuss further the investment in privatization in Azerbaijan.

cc.   On or about April 8, 1998, VIKTOR KOZENY, the defendant, and Clayton Lewis, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, caused Omega to wire transfer $55,000,000 from New York, New

-42-

York, to an account at Hyposwiss to fund Omega's purchase of privatization vouchers and options in Azerbaijan.

dd.   On or about April 15, 1998, Hans Bodmer, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, chartered a jet which carried from Zurich, Switzerland to Baku approximately $20,000,000 in United States currency provided by Omega for the purchase of privatization vouchers and options in Azerbaijan.

ee.   On or about April 24, 1998, and on or about April 25, 1998, VIKTOR KOZENY and FREDERIC BOURKE, Jr., the defendants, and Clayton Lewis, Hans Bodmer, and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, met in Baku for the official office opening of Minaret and to discuss further privatization in Azerbaijan.

ff.   On or about April 30, 1998, DAVID PINKERTON, the defendant, and a co-conspirator not named as a defendant herein sent an interoffice memorandum to various officers and employees of AIG regarding AIG's proposed investment in privatization in Azerbaijan.

gg.   Between in or about April 1998 and in or about June 1998, VIKTOR KOZENY, the defendant, and others known and unknown to the Grand Jury, directed Hans Bodmer, a co-conspirator not named as a defendant herein, to open bank

-43-

accounts for the benefit of certain of the Azeri Officials and their family members.

hh.  Between on or about May 4, 1998, and on or about May 6, 1998, VIKTOR KOZENY and FREDERIC BOURKE, JR., the defendants, and others known and unknown to the Grand Jury, traveled with potential investors to Baku to discuss further investment in privatization in Azerbaijan.

ii.  On or about May 8, 1998, VIKTOR KOZENY, the defendant, instructed Hans Bodmer and Thomas Farrell, co-conspirators not named as defendants herein, to wire $100,000 to a bank account for the benefit of SPC Official #2.

jj.  On or about May 9, 1998, VIKTOR KOZENY, the defendant, and others known and unknown to the Grand Jury, arranged for a representative of London jeweler Asprey & Garrard to travel from London to Baku and personally deliver six gifts worth approximately £386,750 (approximately $630,480) to the SPC Officials and others in Baku on the occasion of the Senior Azeri Official's birthday on May 10, 1998.

kk.  Between on or about May 15, 1998, and on or about May 17, 1998, DAVID PINKERTON, the defendant, and a co-conspirator not named as a defendant herein traveled to Cairo, Egypt, to attend a meeting with a co-conspirator not named as a defendant herein, who was an officer and investor in Oily Rock, regarding the proposed investment by AIG with Omega, Pharos and

VIKTOR KOZENY, the defendant, in privatization in Azerbaijan.

   ll.  In or about mid-May 1998, VIKTOR KOZENY, the defendant, instructed Thomas Farrell, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, to deliver millions of dollars of United States currency to SPC Official #2 in his government office.

   mm.  Between in or about mid-May 1998 and on or about June 25, 1998, VIKTOR KOZENY, the defendant, Hans Bodmer and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, wired and caused to be wired approximately $6,900,000 from bank accounts in Switzerland to bank accounts in various jurisdictions for the benefit of the SPC Officials and their relatives.

   nn.  Between on or about May 24, 1998, and on or about May 28, 1998, VIKTOR KOZENY and FREDERIC BOURKE, JR., the defendants, Thomas Farrell, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, paid and caused to be paid medical, hotel, meal, designer clothing and other expenses for SPC Official # 2, during a visit to New York, New York.

   oo.  Between on or about June 8, 1998, and on or about June 11, 1998, VIKTOR KOZENY and DAVID PINKERTON, the defendants, Hans Bodmer, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury,

-45-

caused AIG to wire funds from New York, New York to accounts in Switzerland, including an account at Hyposwiss, for the purchase of approximately $15,000,000 in Azeri privatization vouchers and options under AIG's Assumption Agreement and Co-Investment Agreement with Omega, Pharos, Oily Rock and Minaret.

        pp.  On or about July 1, 1998, VIKTOR KOZENY, the defendant, Hans Bodmer and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, wired and caused to be wired $50,000, to a bank account in the United States for the benefit of SPC Official #2's son.

        qq.  On or about July 8, 1998, FREDERIC BOURKE, JR., the defendant, Clayton Lewis and Hans Bodmer, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, participated in an ORUSA board meeting conducted by conference call, hosted from Omega and Pharos' offices in New York, New York, wherein Bodmer advised the participants that the issuance of an additional 300,000,000 Oily Rock shares had been authorized.

        rr.  On or about July 10, 1998, FREDERIC BOURKE, JR., the defendant, and members of his family and his personal friends, invested an additional approximately $1,000,000, through a company called Blueport International, Ltd. in Oily Rock.

ss.  In or about September 1998, VIKTOR KOZENY and FREDERIC BOURKE, JR., the defendants, Thomas Farrell, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, paid and caused to be paid medical, hotel, meal, and other expenses for SPC Official # 2, during a visit to New York, New York.

tt.  Between on or about January 15, 1999, and on or about January 17, 1999, Thomas Farrell, a co-conspirator not named as a defendant herein, traveled from Russia to Baku to meet with SPC Official #2 in connection with the investment in privatization.

uu.  Between on or about February 10, 1999, and on or about February 12, 1999, FREDERIC BOURKE, JR., the defendant, and others known and unknown to the Grand Jury, traveled from New York, New York, to Baku to meet with the Senior Azeri Official and the SPC Officials in connection with the investment in privatization.

(Title 18, United States Code, Section 371.)

-47-

## COUNTS TWO THROUGH THIRTEEN

### (Violations of the Foreign Corrupt Practices Act)

The Grand Jury further charges:

68. Paragraphs one (1) through sixty-two (62) and sixty-six (66) through sixty-seven (67) are repeated and realleged as if set forth in full herein.

69. On or about the dates set forth below, in the Southern District of New York and elsewhere, the defendant(s) listed below, being American citizens and "domestic concerns," agents of "domestic concerns," and/or officers, directors and shareholders of "domestic concerns," as those terms are defined in the FCPA, made use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, and offer, gift, promise to give, and authorization of the giving of anything of value to foreign officials for purposes of (a) influencing acts and decisions of such foreign officials in their official capacity, (b) inducing such foreign officials to do and omit to do acts in violation of the lawful duty of such officials, and (c) inducing such foreign officials to use their influence with foreign governments and instrumentalities thereof to affect and influence acts and decisions of such governments and instrumentalities, in order to assist the defendant(s) listed below in obtaining and retaining

-48-

business for and with, and directing business to, any person; to
wit, the defendant(s) listed below participated in making
unlawful offers, payments, promises to pay, and payment
authorizations to Azeri government officials, including to the
Azeri Officials directly and as payments to members of their
families and friends, as described more fully in Count One above,
and in furtherance thereof, used the following means and
instrumentalities of interstate commerce to make or cause the
making of the following offers, payments, promises to pay, and
payment authorizations:

| COUNT | DEFENDANT(s) | THING(s) OF VALUE | MEANS & INSTRUMENTALITIES | APPROX. DATE |
|---|---|---|---|---|
| 2 | KOZENY | $10,000 paid to unidentified Azeri government official | Airplane transport of cash | July 1997 |
| 3 | KOZENY | "Two-thirds Transfer" | Various, including flights, faxes and telephone calls | August 1997 |
| 4 | KOZENY, BOURKE | Medical, hotel, meal, private jet, charter and commercial air travel expenses for SPC Official #1 | Various, including flights, faxes, telephone calls and wire transfers | Early March 1998 |
| 5 | KOZENY, BOURKE, PINKERTON | Commissions on voucher purchases to SPC Official #2 | Various, including telephone calls, faxes and wire transfers | August 1997 - July 1998 |
| 6 | KOZENY | $100,000 wire payment to SPC Official #2 | Various, including wire transfer | May 8, 1998 |

| 7 | KOZENY | Jewelry and luxury items worth approximately £386,750 ($630,480) from London jeweler Asprey & Garrard to the SPC Officials for the benefit of the Senior Azeri Official | Various, including wire transfer and airplane transport of things of value | May 9, 1998 |
|---|---|---|---|---|
| 8 | KOZENY | Millions of dollars in U.S. currency to SPC Official #2 | Airplane transport of cash | mid-May 1998 |
| 9 | KOZENY | Approximately $6,900,000 in wire transfers to accounts for the benefit of the SPC Officials and relatives of the SPC Officials | Various, including wire transfers | mid-May 1998 - June 25, 1998 |
| 10 | KOZENY, BOURKE | Medical, hotel, meal, designer clothing and other personal expenses for SPC Official #2 | Various, including wire transfer | May 24-28, 1998 |
| 11 | KOZENY, BOURKE | Medical, hotel, meal and other personal expenses for SPC Official #2 | Various, including flights, faxes, telephone calls and wire transfers | Sept. 1998 |
| 12 | KOZENY, BOURKE | "Two-thirds Share Capital Increase" | Various, including faxes and telephone calls | June-July, 1998 |
| 13 | KOZENY | $50,000 wire transfer to United States bank account of son of SPC Official #2 | Various, including wire transfer | July 1, 1998 |

(Title 15, United States Code, Section 78dd-2 and Title 18, United States Code, Section 2.)

## COUNTS FOURTEEN THROUGH TWENTY

### (Violations of the Travel Act)

The Grand Jury further charges:

70.  Paragraphs one (1) through sixty-two (62) and sixty-six (66) through sixty-seven (67) are repeated and realleged as if set forth in full herein.

71.  On or about the dates set forth below, in the Southern District of New York and elsewhere, the defendant(s) listed below, unlawfully, willfully, and knowingly, would and did travel in interstate and foreign commerce and use the mails and facilities in interstate commerce, with intent to otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, violations of the anti-bribery provisions of the FCPA, 15 U.S.C. § 78dd-2, and thereafter would and did perform and attempt to perform acts to otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on, of such unlawful activity; to wit, the defendant(s) listed below traveled and/or transferred money by means of interstate wires, as set forth below, in furtherance of the bribery scheme described more fully in Count One above, and thereafter performed additional acts to promote and carry on that bribery scheme:

| COUNT | DEFENDANT(s) | TRAVEL/WIRE TRANSFER | APPROX. DATE |
|-------|-------------|----------------------|--------------|
| 14 | KOZENY | KOZENY traveled from the Bahamas to New York, New York, to meet with representatives of Omega and Pharos regarding proposed investment in Azeri privatization. | Feb. 24-28, 1998 |

| 15 | KOZENY BOURKE | KOZENY and BOURKE caused approximately $7,000,000 in investment funds to be wire transferred from a bank account in the British Virgin Islands, through a bank account in New York, New York to a bank account in Zurich, Switzerland for the purchase of privatization vouchers and options. | March 2, 1998 |
|----|----|----|----|
| 16 | KOZENY | KOZENY traveled from Washington, D.C. to New York, New York, to meet with Clayton Lewis and others at Omega and Pharos' offices regarding proposed investment in Azeri privatization. | March 11, 1998 |
| 17 | KOZENY | KOZENY caused Omega and Pharos to send several sets of payment instructions from Omega and Pharos' offices in New York, New York to facilitate the transfer of more than $151,000,000 from banks in New York, New York, into Switzerland and thereafter Azerbaijan for the purchase of privatization vouchers and options. | March 27 – June 11, 1998 |
| 18 | PINKERTON | PINKERTON traveled from New York, New York, to Cairo, Egypt, to attend a meeting with an officer and investor in Oily Rock regarding AIG's proposed investment in privatization in Azerbaijan. | May 15-17, 1998 |
| 19 | KOZENY PINKERTON | KOZENY and PINKERTON caused AIG to wire funds from New York, New York, to Switzerland for the purchase of approximately $15,000,000 in Azeri privatization vouchers and options. | June 8-11, 1998 |

| 20 | KOZENY BOURKE | KOZENY and BOURKE caused $1,000,000 in investment funds to be wire transferred through a bank account in New York, New York to a bank account in Zurich, Switzerland for the purchase of privatization vouchers and options. | July 10, 1998 |
|----|---------------|---------|---------------|

(Title 18, United States Code, Sections 1952 and 2.)

## COUNT TWENTY-ONE

### (Money Laundering Conspiracy)

The Grand Jury further charges:

72. Paragraphs one (1) through sixty-two (62) and sixty-six (66) through sixty-seven (67) are repeated and realleged as if set forth in full herein.

73. From in or about March 1998, up to and including in or about September 1998, in the Southern District of New York and elsewhere, VIKTOR KOZENY, FREDERIC BOURKE, JR., and DAVID PINKERTON, the defendants, Clayton Lewis, Hans Bodmer and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to violate Title 18, United States Code, Section 1956(a)(2)(A).

74. It was a part and an object of the money laundering conspiracy that VIKTOR KOZENY, FREDERIC BOURKE, JR., and DAVID PINKERTON, the defendants, Clayton Lewis, Hans Bodmer

and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, in an offense involving and affecting interstate and foreign commerce, unlawfully, willfully, and knowingly would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer, monetary instruments and funds from a place in the United States to and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity; to wit, felony violations of the FCPA, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

### MEANS AND METHODS OF THE MONEY LAUNDERING CONSPIRACY

75. Among the means and methods by which VIKTOR KOZENY, FREDERIC BOURKE, JR., and DAVID PINKERTON, the defendants, Hans Bodmer, Clayton Lewis, and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, carried out the objects of the money laundering conspiracy were the following:

a.   VIKTOR KOZENY, FREDERIC BOURKE, JR., and DAVID PINKERTON, the defendants, Clayton Lewis, Hans Bodmer and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, invested and caused to be invested more than $174,000,000 in the purchase of vouchers and options as part of the privatization program in Azerbaijan.

-54-

b.     VIKTOR KOZENY, FREDERIC BOURKE, JR., and DAVID PINKERTON, the defendants, Clayton Lewis, Hans Bodmer and Thomas Farrell, co-conspirators not named as defendants herein, and others known and unknown to the Grand Jury, transmitted and caused to be transmitted investment funds by wire transfer directly from bank accounts in New York, New York or through correspondent banks in New York, New York, to bank accounts in Zurich, Switzerland and Jersey, Channel Islands, for the purpose of purchasing vouchers and options in Azerbaijan.

## OVERT ACTS

76.  In furtherance of said conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.     On or about March 2, 1998, VIKTOR KOZENY and FREDERIC A. BOURKE, JR., the defendants, Hans Bodmer, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, caused approximately $7,000,000 in investment funds to be wire transferred from a bank account in the British Virgin Islands, through a bank account in New York, New York, to a bank account in Zurich, Switzerland, under the control of KOZENY and Bodmer.

b.     On or about April 8, 1998, VIKTOR KOZENY, the defendant, and Clayton Lewis, a co-conspirator not named as a

-55-

defendant herein, and others known and unknown to the Grand Jury, caused approximately $55,000,000 in investment funds to be wire transferred from bank accounts in New York, New York, to bank accounts in Zurich, Switzerland, under the control of KOZENY and Hans Bodmer, a co-conspirator not named as a defendant herein.

   c. From on or about June 8, 1998 through on or about June 11, 1998, VIKTOR KOZENY and DAVID PINKERTON, the defendants, Hans Bodmer, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, caused approximately $15,000,000 in investment funds to be wire transferred from a bank account in New York, New York to bank accounts in Zurich, Switzerland under the control of KOZENY and Bodmer.

   d. On or about July 10, 1998, VIKTOR KOZENY and FREDERIC A. BOURKE, JR., the defendants, and Hans Bodmer, a co-conspirator not named as a defendant herein, and others known and unknown to the Grand Jury, caused approximately $1,000,000 in investment funds to be wire transferred through a bank account in New York, New York to a bank account in Zurich, Switzerland, under the control of KOZENY and Bodmer.

   (Title 18, United States Code, Section 1956(h).)

## COUNTS TWENTY-TWO THROUGH TWENTY-FIVE

### (Money Laundering)

The Grand Jury further charges:

77.   Paragraphs one (1) through sixty-two (62), sixty-six (66) through sixty-seven (67), and seventy-five (75) through seventy-six (76) are repeated and realleged as if set forth in full herein.

78.   On or about the dates set forth below, in the Southern District of New York and elsewhere, the defendant(s) listed below, in an offense involving and affecting interstate and foreign commerce, unlawfully, willfully, and knowingly would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer, monetary instruments and funds from a place in the United States to and through a place outside the United States, with the intent to promote the carrying on of a specified unlawful activity, that is, violations of the FCPA, 15 U.S.C. § 78dd-1 *et seq.*; to wit, the defendant(s) listed below caused investment funds to be wire transferred from or through the United States to places outside the United States, as set forth below, in furtherance of the bribery scheme described more fully in Count One above:

-57-

| COUNT | DEFENDANT(s) | WIRE TRANSFER | APPROX. DATE |
|-------|--------------|---------------|--------------|
| 22 | KOZENY BOURKE | Approximately $7,000,000 in investment funds wire transferred from a bank account in the British Virgin Islands, through a bank account in New York, New York to a bank account in Zurich, Switzerland | March 2, 1998 |
| 23 | KOZENY | Approximately $55,000,000 in investment funds wire transferred from bank accounts in New York, New York to bank accounts in Zurich, Switzerland | April 8, 1998 |
| 24 | KOZENY PINKERTON | Approximately $15,000,000 in investment funds wire transferred from a bank account in New York, New York to bank accounts in Zurich, Switzerland | June 8-11, 1998 |
| 25 | KOZENY BOURKE | Approximately $1,000,000 in investment funds wire transferred through a bank account in New York, New York to a bank account in Zurich, Switzerland | July 10, 1998 |

(Title 18, United States Code, Sections 1956(a)(2)(A) and 2.)

## COUNT TWENTY-SIX

### (False Statements)

The Grand Jury further charges:

79. Paragraphs one (1) through sixty-two (62), sixty-six (66) through sixty-seven (67), and seventy-five (75) through seventy-six (76) are repeated and realleged as if set forth in full herein.

-58-

80. Between on or about April 26, 2002, and on or about May 23, 2002, in the Southern District of New York, FREDERIC BOURKE, JR., the defendant, unlawfully, willfully and knowingly did make materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States; to wit, in an interview conducted on four separate days with, among others, a Special Agent of the Federal Bureau of Investigation, BOURKE falsely stated in substance that he was not aware that VIKTOR KOZENY had made payments to Azeri government officials, when in fact, BOURKE well knew and believed that KOZENY had made various bribe payments to the Azeri Officials.

(Title 18, United States Code, Section 1001.)

## COUNT TWENTY-SEVEN

### (False Statements)

The Grand Jury further charges:

81. Paragraphs one (1) through sixty-two (62), sixty-six (66) through sixty-seven (67), and seventy-five (75) through seventy-six (76) are repeated and realleged as if set forth in full herein.

82. Between on or about February 12, 2002, and on or about March 22, 2002, in the Southern District of New York, DAVID PINKERTON, the defendant, unlawfully, willfully and knowingly did make materially false, fictitious and fraudulent statements and

representations in a matter within the jurisdiction of the executive branch of the Government of the United States; to wit, in an interview conducted on four separate days with, among others, a Special Agent of the Federal Bureau of Investigation, PINKERTON stated in substance that he was not aware that the Senior Azeri Official had a financial interest in VIKTOR KOZENY's investment in Azeri privatization, namely Oily Rock, when in fact, as PINKERTON then and there well knew and believed, the Senior Azeri Official did have such a financial interest.

(Title 18, United States Code, Section 1001.)

## FORFEITURE ALLEGATION

83. As the result of committing one or more of the money laundering offenses in violation of 18 U.S.C. § 1956, alleged in Counts 21 through 25 of the Indictment, defendants VIKTOR KOZENY, FREDERIC BOURKE, JR., and DAVID PINKERTON shall forfeit to the United States pursuant to 18 U.S.C. § 982, all property, real and personal, involved in the money laundering offenses and all property traceable to such property, including but not limited to the following:

a. A sum of money equal to $174,000,000 in United States currency, in that such sum in aggregate is property which was involved in the money laundering offenses or is traceable to such property, for which the defendants are jointly and severally liable, including but not limited to:

-60-

(i) A sum of money equal to $7,000,000 in United States currency, in that such sum is property, which was involved in the money laundering offenses charged in Counts 21 and 22, or is traceable to such property, for which the defendants are jointly and severally liable;

(ii) A sum of money equal to $55,000,000 in United States currency, in that such sum is property, which was involved in the money laundering offenses charged in Counts 21 and 23, or is traceable to such property, for which the defendants are jointly and severally liable;

(iii) A sum of money equal to $15,000,000 in United States currency, in that such sum is property which was involved in the money laundering offenses charged in Counts 21 and 24, or is traceable to such property, for which the defendants are jointly and severally liable;

(iv) A sum of money equal to $1,000,000 in United States currency, in that such sum is property, which was involved in the money laundering offenses charged in Counts 21 and 25, or is traceable to such property, for which the defendants are jointly and severally liable; and

(v) Any and all right, title, and interest in the proceeds of the sale of the real property and appurtenances known as the Peak House, 2137 Red Mountain, Aspen, Colorado, and various personalty and furnishings located at the Peak House; to

wit, approximately $20 million in United States currency, which is currently under court-ordered restraint in the matter of National Union Fire Insurance Company of Pittsburgh, PA, et al. v. Viktor Kozeny, et al., 00-B383, a civil action pending in the District of Colorado.

Substitute Assets Provision

b.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

(i)  cannot be located upon the exercise of due diligence;

(ii)  has been transferred or sold to, or deposited with, a third party;

(iii)  has been placed beyond the jurisdiction of the court;

(iv)  has been substantially diminished in value; or

(v)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendant(s) up to the value of the forfeitable property described above, including but not limited to the following:

(i) Any and all right, title, and interest in the real property and appurtenances known as the Calypso House,

Edgewater Drive, Lyford Cay, New Providence, Bahamas;

(ii) Any and all right, title, and interest in the real property and appurtenances known as 17 Fort Hill Lane, Greenwich, Connecticut;

(iii) Any and all right, title, and interest in the real property and appurtenances known as 2131 Red Mountain Road SE, Aspen, Colorado 81611;

(iv) Any and all right, title, and interest in the real property and appurtenances known as 181 Peabody Drive, Seal Harbor, ME 04675;

(v) Any and all right, title, and interest in the real property and appurtenances known as 117-3 Ballantine Road, Bernardsville, NJ 07924.

(Title 18, United States Code, Sections 982 and 1956.)

_____
FOREPERSON

_____
DAVID N. KELLEY
United States Attorney

-63-