**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X

**UNITED STATES OF AMERICA**

    **- against -**

**VIKTOR KOZENY and FREDERIC**
**BOURKE, JR.,**

        **Defendants.**

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/29/2009

**OPINION AND ORDER**

**05 Cr. 518 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

      This prosecution relates to alleged violations of the Foreign Corrupt

Practices Act ("FCPA") by defendant Frederic Bourke, Jr. and others in

connection with the privatization of the State Oil Company of the Azerbaijan

Republic ("SOCAR").  Bourke has submitted a motion in limine to preclude the

Government from offering background evidence relating to corruption in

Azerbaijan.  For the reasons stated below, his motion is denied.

## II.   BACKGROUND

The Government's allegations in this case are complex, and it is unnecessary to recite them here.  The relevant facts are as follows:  SOCAR is the state-owned oil company of the Republic of Azerbaijan ("Azerbaijan").[1]  In the mid-1990s, Azerbaijan began a program of privatization.[2]  The program gave the President of Azerbaijan, Heydar Aliyev, discretionary authority as to whether and when to privatize SOCAR.[3]  Bourke and others allegedly violated the FCPA by making payments to Azeri officials to encourage the privatization of SOCAR and to permit them to participate in that privatization.[4]

## III.   LEGAL STANDARD

### A.   Motion in Limine

The Federal Rules of Evidence favor the admission of all relevant evidence.[5]  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or

---

[1]     *See* Indictment of Frederic Bourke, Jr. ¶ 3.

[2]     *See id.* ¶ 4.

[3]     *See id.*

[4]     *Id.* ¶ 18.

[5]     *See* Fed. R. Evid. 402.

less probable than it would be without the evidence."[6]  A district court will "exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds."[7]  "Indeed, courts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context."[8]  Moreover, a court's ruling regarding a motion in limine "is subject to change when the case unfolds . . . even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling."[9]

## B.    Conscious Avoidance

"The modern conscious avoidance doctrine . . . is that '[w]hen knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence, unless he actually believes that it does not exist.'"[10]  Thus, an instruction on

---

[6]     Fed. R. Evid. 401.

[7]     *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006).

[8]     *United States v. Chan*, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002).

[9]     *Luce v. United States*, 469 U.S. 38, 41 (1984).

[10]     *United States v. Nektalov*, 461 F.3d 309, 314 (2d Cir. 2006) (2d Cir. 2007) (quoting *Leary v. United States*, 395 U.S. 6 (1969)).

conscious avoidance is proper "only '(i) when a defendant asserts the lack of some specific aspect of knowledge required for conviction and (ii) the appropriate factual predicate for the charge exists.'"[11]   A factual predicate exists when "the evidence is such that a rational juror may reach the conclusion beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact."[12]   However, "a conscious avoidance instruction is not appropriate where the *only* evidence alerting a defendant to the high probability of criminal activity is direct evidence of the illegality itself."[13]

When the charge is appropriate, the Second Circuit has "stressed that it is 'essential to the concept of conscious avoidance[ ] that the defendant must be shown to have decided not to learn the key fact, *not merely to have failed to learn*

---

[11]     *United States v. Kaplan*, 490 F.3d 110, 181 (2d Cir. 2007) (quoting *United States v. Quattrone*, 441 F.3d 153, 181 (2d Cir. 2006)).

[12]     *Id.*

[13]     *Nektalov*, 461 F.3d at 315 (quotation marks omitted) (emphasis added).  *Accord United States v. Ferrarini*, 219 F.3d 145, 157 (2d Cir. 2000) ("The evidence shows that [defendant] actually knew of the frauds; it is not sufficient to permit a finding that he consciously avoided confirming them."). And yet, "where the evidence could support both a finding of actual knowledge and a finding of conscious avoidance, the government may present conscious avoidance as an argument in the alternative." *Nektalov*, 461 F.3d at 316.

4

*it through negligence.'*"[14]  The Second Circuit has repeatedly quoted a scholarly

treatise on this point to say:

> "'A court can properly find wilful blindness [i.e., conscious
> avoidance] only where it can almost be said that the
> defendant actually knew.  He suspected the fact; he realised
> its probability; but he refrained from obtaining the final
> confirmation because he wanted in the event to be able to
> deny knowledge.    This, and this alone, is wilful
> blindness.'"[15]

## IV.  DISCUSSION

Bourke moves to preclude the Government from presenting

background evidence of corruption in Azerbaijan, which he believes will be

central to the Government's proof that Bourke acted with the requisite knowledge

required by the FCPA.[16]  The FCPA states that "[w]hen knowledge of the

existence of a particular circumstance is required for an offense, such knowledge

is established if a person is *aware of a high probability of the existence of such*

*circumstance*, unless the person actually believes that such circumstance does not

---

[14]     *Nektalov*, 461 F.3d at 315 (emphasis added).

[15]     *Id.* (quoting *United States v. Reyes*, 302 F.3d 48, 54 (2d Cir. 2002)
(quoting Glanville Williams, *Criminal Law: The General Part* § 57, at 159 (2d ed.
1961))).

[16]     *See* Memorandum of Law in Support of Bourke's Motion in Limine
to Exclude Evidence Relating to Corruption in Azerbaijan ("Bourke Mem.") at 2.

exist."[17] Bourke therefore notes that the Government will likely proceed on a "conscious avoidance" theory in an attempt to impute to Bourke knowledge of the alleged bribes.[18]

Bourke makes two arguments in support of his contention that the Government should be precluded from presenting evidence of the prevalence of corrupt business practices in Azerbaijan. *First*, he argues that the conscious avoidance standard "is not a reasonable person standard; the Government cannot rely on evidence that [] Bourke should have known about the bribes to establish

---

[17]     18 U.S.C. § 78dd-2(h)(3)(B) (emphasis added).

[18]     *See* Bourke Mem. at 1-2. A superseding indictment has been filed in this case, and the substantive FCPA charge against Bourke has been removed. However, Bourke is still charged with conspiracy to violate the FCPA. *See* Second Superseding Indictment. Thus, the Government must still demonstrate Bourke's knowledge of the conspiracy's "unlawful purpose" – the bribing of Azeri officials in order to encourage the privatization of SOCAR. *See* 1 L. Sand, J. Siffert, W. Loughlin, S. Reiss, & N. Batterman, *Modern Federal Jury Instructions* ¶ 19.01, instr. 19-6 (2008) (As part of the charge, suggesting "Did [the defendant] participate in it with knowledge of its unlawful purpose and with the specific intention of furthering its business or objective . . . ."); *United States v. Barlin*, 686 F.2d 81, 90 (2d Cir. 1982) (ruling that a conspiracy instruction that the jury must find that the defendant "participate[d] in some way in carrying out the illegal purpose with at least some knowledge of that illegal purpose and the intention to further it" was appropriate and sufficiently clear). Whether the Government may prove Bourke's knowledge based on a "conscious avoidance" theory and the means by which it may do so still require resolution.

conscious avoidance . . . ."[19]  *Second*, he asserts that the Government should be permitted to introduce evidence regarding the knowledge of individuals other than the defendant "'only if there is some other evidence in the record – concerning, for example, the nature of the fraud or the relationship of the parties – from which to conclude that the defendant would have the same knowledge.'"[20]

## A.    Evidence Showing Bourke's Awareness of Corruption in Azerbaijan

Bourke notes correctly that the Government cannot present background evidence of corruption in Azerbaijan for the purpose of demonstrating that Bourke "should have known" that Azeri officials would require bribes in order to facilitate the privatization of SOCAR.[21]  In response, the Government

---

[19]    Bourke Mem. at 3.

[20]    *Id.* at 5 (quoting *Kaplan*, 490 F.3d at 120).

[21]    *See Nektalov*, 461 F.3d at 315 (holding that it is "'essential to the concept of conscious avoidance[ ] that the defendant must be shown to have decided not to learn the key fact, not merely to have failed to learn it through negligence.'"). *See also United States v. Abreu*, 342 F.3d 183, 188 (2d Cir. 2003) (rejecting argument "premised on the common misconception that the conscious avoidance theory allows the prosecution to establish knowledge by proving only that the defendant should have known of a certain fact, even if he did not actually know it"); *Ferrarini*, 219 F.3d at 157 ("[W]e have held that conscious avoidance cannot be established when the factual context *should have apprised* [the defendant] of the unlawful nature of his conduct – [] and have instead required that the defendant have been shown to have *decided* not to learn the key fact") (internal quotations omitted) (emphasis in original).

7

argues that such evidence will be used not to show that Bourke "should have known," but to show that Bourke was aware of the high probability that Azeri officials were being bribed.[22]

      The Government informs the Court that it intends to present several items of evidence that – together – are relevant to such proof, including (1) that "Azerbaijan in the late 90s was one of the most corrupt nations in the world;" (2) it was "well-known that post-Communist privatization of state-owned assets was particularly plagued by corruption, not only in Azerbaijan, but in many other former Soviet states;" (3) "SOCAR was Azerbaijan's most important economic and strategic asset: it was highly unlikely that the president of Azerbaijan would permit it to be privatized and acquired at an outrageously low price by a group of foreign investors, absent some corrupt arrangement with the Azeri leadership;" and (4) "Bourke invested because of his great faith in co-defendant Kozeny, whose notoriety as the 'Pirate of Prague' arose from his prior corrupt dealings in privatization in the Czech Republic . . . ."[23]

---

[22]    *See* Government's Opposition to the Defendant's Motion in Limine to Exclude Evidence Relating to Corruption in Azerbaijan ("Gov't Mem.") at 2-3.

[23]    *Id.* at 3.  The Government intends to call an expert to testify about most of these topics. *See* Bourke's Motion in Limine With Respect to the Expert Testimony of Rajan Menon.  While the expert is permitted to testify regarding corruption in Azerbaijan at the time of Bourke's investment in SOCAR, he will

That Azerbaijan was known to be a corrupt nation, that the post-Communist privatization processes in other countries have been tainted by corrupt practices, that SOCAR was a strategic asset of Azerbaijan, and that Kozeny was notorious as the "Pirate of Prague" makes it probable that Bourke was aware that Azeri officials were being bribed in order to ensure the privatization of SOCAR.  I therefore find this evidence to be relevant and admissible.

Nevertheless, Bourke points to certain language that the Government uses that might confuse a jury into believing that the correct standard is a negligence standard – in other words, that if Bourke had made an investigation, he would have discovered the alleged bribery.[24]  For instance, the Government asserts that

> [i]t is easily established that Bourke *could have learned* of Azerbaijan's corruption problem: by speaking with an academic or other expert, reviewing magazines and newspapers, contacting the State or Commerce Departments, or, of course, by speaking with his own lawyers, as he did.  It is not unreasonable to expect, or for the Government to argue, that someone with Bourke's background as a highly successful investor with significant

---

not be allowed to testify that knowledge of such corruption was well-known or notorious.

[24]     *See* Reply Memorandum of Law in Further Support of Bourke's Motion in Limine to Exclude Evidence Relating to Corruption in Azerbaijan ("Bourke Rep. Mem.") at 1-2.

> access to professional services *could have easily obtained*
> information which, the Government's expert will testify, is
> widely available.[25]

Although it is true that the Government was not as careful as it should have been

in choosing its words, Bourke appears to misapprehend the Government's

argument.  The Government is not contending that Bourke was negligent in failing

to investigate whether Kozeny and others were resorting to the use of bribery to

encourage the privatization process.  The Government is arguing instead that it

will prove beyond a reasonable doubt that a person of Bourke's means, who was

considering making a large investment in a venture in Azerbaijan, would have at

least been aware of the high probability that bribes were being paid.[26]

Moreover, no prejudice will result from admitting such evidence

because the Government has demonstrated that it will be able to establish a factual

predicate for a conscious avoidance charge.  The Government notes that it has

accumulated substantial evidence regarding Bourke's awareness of corruption in

---

[25]    Gov't Mem. at 6-7 (emphasis added).

[26]    *See id.* at 7 ("[T]he evidence of corruption in Azerbaijan is not
offered to show that Bourke knew that bribes were in fact being paid.  The
Government is only contending that because the problem of corruption in
Azerbaijan was well known, Bourke likely knew of the problem of corruption.").

Azerbaijan generally.[27]  For instance, the Government seeks to present evidence of conversations in which Bourke was warned by his counsel that Azerbaijan was the "Wild West" and that doing business in Azerbaijan was like the movie "Chinatown," where there are "no rules."[28]

In addition, the Government will introduce a tape recording that it obtained from one of Bourke's counsel, which records a conversation among Bourke, another investor, and their respective attorneys.  In this recording, Bourke expresses his concern that Kozeny and his employees are paying bribes and violating the FCPA: "I mean, they're talking about doing a deal in Iran . . . . Maybe they . . . bribed them, . . . with ten million bucks.  I, I mean, I'm not saying that's what they're going to do, but suppose they do that."[29]  Later in the conversation, Bourke says:

---

[27]    *See id.* at 4.

[28]    *Id.*  The Government has informed the Court that it obtained this evidence when Bourke appeared for a proffer session and waived the attorney-client privilege after he learned that he was a subject of the Government's investigation. *See id.* at 3.  When Bourke's proffer agreement was discussed at the oral argument on the motions, counsel for Bourke did not deny that the privilege had been waived and the evidence was admissible. *See* Transcript of May 21, 2009 Conference at 39:22-42:2.

[29]    *Id.* at 4.

> I don't know how you conduct business in Kazakhstan or
> Georgia or Iran, or Azerbaijan, and if they're bribing
> officials and that comes out . . . Let's say . . . one of the
> guys at Minaret says to you, Dick, you know, we know
> we're going to get this deal.  We've taken care of this
> minister of finance, or this minister of this or that.  What
> are you going to do with that information?[30]

Still later in the conversation, Bourke again ponders:

> What happens if they break a law in, uh, in uh, you know,
> Kazakhstan, or they bribe somebody in Kazakhstan and
> we're at dinner and . . . one of the guys [says] 'Well, you
> know, we paid some guy ten million bucks to get this now.'
> I don't know, you know, if somebody says that to you, I'm
> not part of it, I didn't endorse it.  But let's say, they tell you
> that.  You got knowledge of it.  What do you do with that?
> . . . I'm just saying to you in general . . . *do you think
> business is done at arm's length in this part of the
> world.*"[31]

While these comments do not demonstrate conclusively that Bourke knew that

bribes were being paid in Azerbaijan to further the privatization of SOCAR, they

certainly suggest that he suspected that might be the case.  Furthermore,

statements such as "What are you going to do with that information?" and "You

got knowledge of it.  What do you do with that?" intimate that he was concerned

about what he might discover.  Thus, if Bourke did not actually know, this

---

[30]     *Id.*

[31]     *Id.* (emphasis added).

evidence is at least sufficient for a jury to conclude beyond a reasonable doubt
that he knew of the high probability that bribes were being paid.  In addition, his
lack of actual knowledge would suggest that he decided not to learn more.[32]
Because this evidence is both relevant and probative to whether Bourke acted with
conscious avoidance, Bourke's motion to preclude such evidence is denied.

### B.    The Knowledge of Third Parties

The defense next contends that the Government should not be
permitted to introduce evidence of third parties' knowledge of the bribes unless
the Government also presents evidence "'from which to conclude that [Bourke]
would have the same knowledge.'"[33]  In *United States v. Kaplan*, the Government
sought to demonstrate the defendant's knowledge that he was participating in
insurance fraud by presenting evidence that third parties knew of such fraud.  In

---

[32]      The defense also argues that the Government "cannot justify the
admissibility of its 'conscious avoidance' evidence by pointing to purported
evidence of Bourke's actual knowledge . . . ."  Bourke Rep. Mem. at 3 (citing
*Ferrarini*, 219 F.3d at 157).  However, evidence that Bourke's counsel had warned
him of doing business in Azerbaijan, likening the country to the "Wild West" and
to the movie "Chinatown," as well as a tape recording in which Bourke
communicates his concerns about running afoul of the FCPA to his attorney and
another investor demonstrates not that Bourke actually knew of the bribes, but that
he was aware of the high probability that bribes were being paid to secure the
success of his investment.

[33]      Bourke Mem. at 2 (quoting *Kaplan*, 490 F.3d at 120).

13

ruling that the district court had erred in admitting the evidence, the Second

Circuit noted that the Government had failed to proffer "evidence supporting the

conclusion that such knowledge was communicated to Kaplan, or that Kaplan had

been exposed to the same sources from which these others derived their

knowledge of fraud."[34] Without such evidence, the court held that such evidence

had "little relevance in the circumstances of Kaplan's case."[35]

      The Second Circuit also held that such evidence was of "minimal

probative value," not only because the Government failed to offer evidence that

would connect the third parties' knowledge of the fraud to Kaplan, but also

because the testimony concerning knowledge of the fraud was "speculative or

flawed in other respects."[36] For instance, the court noted that the Government had

failed to lay a proper foundation for a witness' statement that it was "[his]

understanding that [the insurance] industry was a very big sham."[37] The court

found that the witness was not qualified to have special knowledge of that

---

[34]   *Kaplan*, 490 F.3d at 121.

[35]   *Id.*

[36]   *Id.*

[37]   *Id.*

14

"industry."[38]  The court also noted that the witness' testimony with respect to the knowledge of another party was hearsay upon hearsay.[39]  Because the testimony would have required the jury to "draw a series of inferences, unsupported by other evidence, to connect this witness' testimony about his guilty knowledge (and that of others) to Kaplan's own knowledge," the court held that the slight probative value of such testimony was outweighed by the risks that the jury would draw improper inferences from the testimony.[40]

In this case, the Government has responded that there is "ample" evidence that the knowledge of others was likely communicated to Bourke and that Bourke was exposed to the same sources from which others had derived their knowledge of the fraud.[41]  For instance, Bourke traveled by private jet through the former Soviet Union with Viktor Kozeny, the alleged mastermind behind the SOCAR investment.[42]  The Government intends to show that Kozeny knew about

---

[38]   *See id.*

[39]   *See id.* at 122.

[40]   *Id.*

[41]   *See* Gov't Mem. at 6.

[42]   *See id.*

the corruption in Azerbaijan and thereafter undertook to establish a relationship with a high-ranking Azeri official.[43]

Moreover, the Government will present evidence that Bourke became friendly with others in Kozeny's "inner circle," including Clayton Lewis, a former employee of Omega Advisors, which was a co-investor in the venture, and Thomas Farrell, who was employed by Kozeny to facilitate the scheme. The Government has informed the Court that Farrell will testify about the significant amount of time he spent in Azerbaijan and elsewhere in the Soviet Union and his awareness of the corruption in that part of the world.[44] This evidence, the Government argues, will make clear that Bourke likely possessed the same knowledge.[45]

I am satisfied that there will be sufficient testimony from Government witnesses regarding the close business relationships between Bourke, Kozeny, and Lewis, and the participation of others like Farrell. Based on these relationships the jury has a fair basis to infer that the knowledge of these individuals can be imputed to Bourke.

---

[43] *See id.*

[44] *See id.*

[45] *Id.*

Bourke argues additionally that – like the evidence in *Kaplan* –

evidence of Kozeny's knowledge or the knowledge of others will be more

prejudicial than probative.[46] The first of the concerns in *Kaplan* is addressed

above – namely linking Bourke to the witnesses with knowledge of the bribery

scheme.  Regarding the concern that such evidence should not be "speculative" or

"flawed," I note that the Government intends to call Farrell as a witness,[47] and he

is likely to testify regarding his personal knowledge of the bribery.  The same

should be the case for other witnesses who were closely involved in the venture,

such as Lewis.[48]

I further conclude that the prejudice caused by such proof does not

outweigh its probative value.  Unlike the facts of *Kaplan* in which the Government

sought to prove Kaplan's knowledge solely through the knowledge of others,

evidence of Kozeny's knowledge or the knowledge of others is only one part of

the proof the Government will introduce.  The Government has also stated its

---

[46]    *See* Bourke Rep. Mem. at 3.

[47]    The Government has also submitted a motion in limine with respect
to the defense's cross-examination of Thomas Farrell.

[48]    Although Kozeny will not be a witness at trial, statements made by
Kozeny during the course of and in furtherance of the conspiracy are admissible
under Federal Rule of Evidence 801(d)(2)(E) and are therefore not hearsay.

17

intention to present direct evidence that will support its conscious avoidance theory. This evidence includes the conversations that Bourke had with his counsel which have been discussed and addressed above.

## V.   CONCLUSION

For the reasons set forth above, Bourke's motion in limine seeking to bar the Government from offering evidence of corruption in Azerbaijan is denied. The Clerk of the Court is directed to close this motion (document no. 182).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            May 29, 2009

18