# MICHAEL E. TIGAR

ATTORNEY AT LAW
PROFESSOR OF THE PRACTICE OF LAW EMERITUS, DUKE UNIVERSITY SCHOOL OF LAW
PROFESSOR EMERITUS, WASHINGTON COLLEGE OF LAW

552 FEARRINGTON POST
PITTSBORO, NC 27312-8501
(202) 549-4229
E-mail : metigar@gmail.com
Admitted DC & NY. Practice limited to
federal and international matters

[Stamp: USDC SDNY DOCUMENT ELECTRONICALLY FILED DOC #: _____ DATE FILED: 12-28-11]

December 22, 2011

[Stamp: RECEIVED SHIRA A. SCHEINDLIN]

**VIA FACSIMILE AND
OVERNIGHT DELIVERY**

The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street
New York, NY  10007

    Re:    *United States v. Bourke*, 05 Cr. 518 (SAS)

Dear Judge Scheindlin:

    We have reviewed the court of appeals opinion and this court's order of December 15, 2011, and the court's further order of December 16, 2011. The Bureau of Prisons has designated Mr. Bourke to Englewood and he is scheduled to report there January 3, 2012. This letter requests that this court modify its order of December 15, to provide that Mr. Bourke's bail be continued on appeal, pending disposition of rehearing and rehearing *en banc* and disposition by the United States Supreme Court on petition for certiorari.

    This motion is based on our thorough review of the court of appeals opinion and our belief that bail on appeal is proper under the Bail Reform Act.

    If bail is not granted, Mr. Bourke will have served all or almost all of his sentence before the judgment of conviction becomes final following the appellate review to which he has a right and which his counsel will seek on his behalf.

**PRIOR RULING**

    The court granted bail on appeal. The defense memorandum containing relevant legal argument is docket no. 244. The court's ruling appears at Tr., 11/10/09, p. 43. The legal analysis remains the same. The question is not whether this court, or even the court of appeals, considers its opinion valid, but whether there is a substantial argument to be made. Given that this court ("the district court") entered its order "regarding release after a judgment of

*[Handwritten annotations in margins:]*

*For the reasons previously explained by this Court, bail is continued for the remainder of the appellate process — including disposition of rehearing and rehearing en banc and discussion of any petition for certiorari. Yet is limited to June order to further (USA). That the Supreme Court. JAN 3, 2012*

The Honorable Shira A. Scheindlin
December 22, 2011
Page 2

conviction," F.R.App.P. 9(b), it retains the right to modify that order. That is, if the court had said nothing about incarceration in its December 15 order, Mr. Bourke's bail would continue on the conditions set at sentencing. Circuit law has long recognized that the trial court has the unique power to rule on bail issues in the first instance, even when a notice of appeal is filed. *United States v. Hansell*, 109 F.2d 613 (2d Cir. 1940). Rule 9 does not change matters.

## THE COURT OF APPEALS OPINION AND THE STATUTORY STANDARD

Of course, there is no question here of flight or danger. The question is whether rehearing and certiorari applications raise a substantial question of law or fact likely to result in a new trial. The issues briefed in the earlier motion are not weakened, but rather clarified, by the court of appeals opinion.

*Conscious Avoidance (The "Ostrich Instruction")*

Ever since Judge, later Justice, Kennedy's opinion in *United States v. Jewell*, 532 F.2d 697 (9th Cir. 1976), judges, lawyers and academic commentators have been awaiting a Supreme Court decision on the ostrich instruction. *See generally* Wayne R. LaFave, Criminal Law ¶5.2(b), at 247 and n.23 (4th ed. 2003); Robbins, The Ostrich Instruction: Deliberate Ignorance as a Criminal Mens Rea, 81 J. Crim.L. & Criminology 191 (1990). In *Global-Tech Appliances, Inc., v. SEB S.A.*, 131 S. Ct. 2060 (2011), decided while the appeal was pending, the court finally signaled readiness to address the issue. The panel chose not to discuss the case. Yet, it signals an approach that, if applied here, would lead to a different result.

For decades, the Supreme Court has been strengthening the law of *mens rea*, particularly for statutory crimes. *See, e.g., Cheek v. United States*, 498 U.S. 192 (1991); *Ratzlaff v. United States*, 510 U.S. 135 (1994); *Staples v. United States*, 511 U.S. 600 (1994). *See also Liparota v. United States*, 471 U.S. 419 (1985). At the same time, prosecutors have been working to relax the proof required to sustain the burden that the Court has carefully erected.

*Global-Tech* confirms that the evidence does not support the willful blindness instruction. The decision holds that for willful blindness to substitute for actual knowledge, "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Id.* at 2070. The Court explained: "Under this formulation, a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts. . . . By contrast, a reckless defendant is one who merely knows of a substantial and unjustified risk of such wrongdoing . . . and a negligent defendant is one who should have known of a similar risk but, in fact, did not." *Id.* at 2070-71.

The "deliberate actions" prong of the *Global-Tech* standard is crucial here. After *Global-Tech*, it is not enough for willful blindness that the defendant decides not to acquire knowledge of a fact he suspects exists. He must make "active efforts" to prevent himself from acquiring the knowledge. *Id.* at 2071. In other words, *Global-Tech* holds that the defendant must do more than decide not to look; he must act affirmatively to cover his eyes.

This standard leads one towards analyses such as that of Judge Posner in *United States v. Giovanetti*, 919 F.2d 1223 (7th Cir. 1990) ("The most powerful criticism of the ostrich instruction is, precisely, that its tendency is to allow juries to convict upon a finding of negligence for crimes that require intent. . . . The criticism can be deflected by thinking carefully about just what it is that real ostriches do (or at least are popularly supposed to do). They do not just fail to follow through on their suspicions of bad things. They are not merely careless birds. They bury their heads in the sand so that they will not see or hear bad things. They deliberately avoid acquiring unpleasant knowledge"). These analyses recognize and respect the tension between protective rules about *mens rea* and the corrosive effect of rules that relax the government's obligation of proof.

Mr. Bourke's case presents this issue in a way that merits consideration on rehearing, rehearing *en banc* and certiorari. Reversal on this ground would affect both counts.

*Rule 106 – Rule of Completeness*

In *Beech Aircraft v. Rainey*, 488 U.S. 153 (1988), Justice Brennan's opinion on the issue begins with the telling observation "We have no doubt the jury was given a distorted and prejudicial impression of Rainey's letter." *Id.* at 170. The issue is whether the same can be said of Schmid's memorandum. The purpose of Rule 106 is to give the jury "a complete understanding of the total tenor and effect of the utterance." *Id.* at 171 (quoting *Wigmore*). This purpose is defeated by focusing narrowly on the admissibility of the omitted portion as an isolated matter, and *Beech* so holds.

Here the significance of the omitted portion looms large and casts a shadow over not only the question of harmless error but also that of the Bodmer-Farrell credibility. Schmid's memo says plainly that "Neither Hans Bodmer nor anyone else of MBP has specific knowledge of corrupt payments." GX181, ¶23. If Bodmer had no such knowledge, he could hardly have conveyed it to Mr. Bourke, in February 1998 or at any other time.

The Rule 106 argument is significant because it addresses the unfairness of allowing a party to present its case in evidentiary morsels that seem appetizing, while preventing the jurors from seeing the unpalatable aspect of the entire repast.

*Jury Unanimity as to Overt Act or Acts*

The panel's disposition of this issue propels this significant question to a new level. We have briefed the issue extensively, and no one can doubt that the recent Supreme Court emphasis on the right to jury determination is relevant and that this issue must eventually be resolved by that court. The presence of the "overt act" requirement in conspiracy law is not simply an afterthought. It represents a deliberate departure from the law of conspiracy as it was understood by Star Chamber. The court of appeals has in a prior case said that overt act is an "element" of conspiracy, *United States v. Reyes*, 302 F.3d 48, 52 (2d Cir. 2002). The contrary view rests upon dictum in a Supreme Court case half a century old. The court found this issue substantial at Mr. Bourke's sentencing, Sentencing Tr. at 41, and it remains so.

*The Farrell Cross-Examination*

We have briefed this issue, and refer to those prior submissions.

*Summary*

Each of these issues is significant and if Mr. Bourke prevailed on any one of them, the result would be outright reversal of all counts or a new trial because of the interrelationship of the various charges.

### ADDITIONAL REASON

We respectfully submit that bail decisions should reflect a proportional sense of justice. Imprisoning Mr. Bourke while the significant issues in his case are under review raises the considerations that Justice Jackson, as Circuit Justice, expressed in *Williamson v. United States*, 184 F.2d 280 (1950). This case is perhaps not as "high-profile" as that one, but it has attracted attention in the United States and elsewhere in the world. Mr. Bodmer and Mr. Farrell have remained at liberty while their sentencing dates were repeatedly postponed, even though Mr. Bourke's trial has long been over. Mr. Kozeny remains at liberty while the Privy Council considers his matter. In sum, the judicial and prosecutorial process related to this series of transactions is still very much underway.

Very truly yours,

Michael E. Tigar

MET/sh
Enclosure

cc:     Harry Chernoff, Esq. (via email to harry.chernoff@usdoj.gov)